## Case No. 3,712.

### Ex parte DEANE.

[2 Cranch, C. C. 125.] [1]

MUNICIPAL CORPORATIONS—AUTHORITY OF MAYOR AND COUNCIL—TERRITORIAL LIMITS.

1. The common council of Alexandria has no authority to make by-laws operating beyond the

[1] [Reported by Hon. William Cranch, Chief Judge.]

limits of the town, as described in the acts of Virginia of December 13, 1796 [2 St. Va. (N. S.) 41], and January 8, 1798 [Id. 122], and the jurisdiction of the mayor is confined to the same limits.

2. The corporation of Alexandria cannot enforce its by-laws by corporal punishments.

This was a motion to the court for a habeas corpus to bring up the slaves of Joseph Deane, who had been committed by the mayor of the town for the supposed violation of a by-law prohibiting the nightly meeting of slaves, &c., and the question was, whether the jurisdiction of the mayor and common council extended to the northward of the range of lots on Montgomery street.

Mr. Taylor, for Mr. Deane.

By the charter of 1779, the judicial power of the corporation extended half a mile beyond the limits of the town, but their legislative power was confined to those limits. They had power "to make by-laws and ordinances for the regulation and good government of said town," "to be observed and performed by all manner of persons residing within the same, under reasonable penalties and forfeitures, to be levied by distress and sale of the goods of the offenders." The act of 1785 [Hen. St. 205] did not enlarge the limits of the town, but provided, that when the proprietors of lands within a certain district "round the said town" shall incline to lay out the same in town lots for the purpose of building thereon, they shall be laid out so as to correspond with the streets of the town. The act of 1786 [Hen. St. c. 73, p. 362], provides "that the limits of the town of Alexandria shall extend to and include, as well the lots formerly composing the said town, as those adjoining thereto, which have been and are improved." The act of the 13th of December, 1796, provides, "Whereas several additions of lots contiguous to the town of Alexandria, have been laid off by the proprietors of the land, in lots of half an acre each, extending, to the north, to a range of lots on the north side of a street called Montgomery; upon the south, to the line of the District of Columbia; upon the west, to a range of lots on the west side of West street; and on the east, to the river Potomac; that many of the lots in the said addition have already been built upon, and many more will soon be improved; and whereas it has been represented to the general assembly, that the inhabitants residing on the said lots are not subject to the regulations made and established for the orderly government of the town, and for the preservation of the health of the inhabitants, by the prevention and removal of nuisances, upon which their prosperity and well being does very much depend: Sec. 1. Be it therefore enacted, that each and every lot and part of a lot within the aforesaid limits, on which, at this time, is built a dwelling-house of at least sixteen feet square, or equal thereto in size, with a brick or stone chimney, and that each and

every lot within the said limits, which shall hereafter be built upon, shall be incorporated with the said town of Alexandria, and be considered as part thereof." The second section provides that the mayor and commonalty may compel the proprietors of lots within those limits, and not incorporated with the town, to remove nuisances in the same manner as if the lots were within the town. The act of the 8th of January, 1798, recites, that, "Whereas by an act of assembly passed in 1796, entitled," &c., "it is enacted that certain improved lots and all others, as they become so improved, within the bounds in the said act mentioned, be added to and made part of the said town of Alexandria, thereby leaving out of the jurisdiction of the said mayor and commonalty of the said town, the unimproved lots within the limits aforesaid, as long as they shall so remain unimproved; by which means the prosperity of the said town is in a great degree prevented.". "Be it enacted that the unimproved lots within the limits aforesaid, shall be and are hereby incorporated with, and considered as a part of the said town of Alexandria, and subject to the same regulations as the other part thereof." By the act of congress of the 25th of February, 1804 (2 Stat. 257), "To amend the charter of Alexandria," it is enacted (section 4), "That the jurisdiction of the said common council shall extend to the limits heretofore prescribed by law and exercised by the mayor and commonalty," and by the fifth section "shall have power to make all laws which they shall conceive requisite for the preservation of the health of the inhabitants and for the regulation of the morals and police of the said town, and to enforce the observance of their laws by reasonable penalties and forfeitures, to be levied upon the goods and chattels of the offender;" "provided that such laws shall not be repugnant to, or inconsistent with the laws and constitution of the United States." By the act of the 27th February, 1801 (2 Stat. 103), all the judicial power of the corporation was abolished, and the new charter of 1804 does not extend the jurisdiction of the corporation beyond the limits of the town, except to the poor-house, and the ten acre lot on which it stands. The lot on which the meeting of negroes was held, was at some distance north of the range of lots on Montgomery street.

E. J. Lee (the mayor) contended that the lot was within the jurisdiction of the corporation, by virtue of the acts of 1785, 1786, 1796, and 1798, and that the by-law was an amelioration of the general law of Virginia, because it allowed an alternative of fine or corporal punishment; whereas the law of Virginia inflicted corporal punishment only.

THE COURT (THRUSTON, Circuit Judge, absent) was of opinion that the common council had no authority to make by-laws operating beyond the limits of the town, as described in the acts of 1796 and 1798, and that the jurisdiction of the mayor was confined to the same limits, and that the corporation could not enforce its by-laws by corporal punishments.